UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────────────────

ERICK ROBERTSON,

                Petitioner,

   – against –

WILLIAM F. KEYSER,

                Respondent.

───────────────────────────────

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

20-cv-4318 (ERK)

KORMAN, *J.*:

    I assume familiarity with the record.  In brief, petitioner was arrested for stealing a van from Ishwerdial Haitram.  Haitram testified at trial that petitioner approached him from behind while he was standing beside the van, shoved him to the ground, and drove off in the van.  NYPD officers pursued petitioner as he fled in the van and apprehended him shortly after he abandoned the vehicle and tried to escape on foot.  Petitioner now seeks habeas relief from a judgment entered after a jury convicted him of robbery in the second degree, grand larceny in the fourth degree, and criminal possession of stolen property in the fourth degree.  Petitioner raises a number of grounds for relief and I address each below.

## DISCUSSION

A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") allows a federal court to grant habeas relief to a state prisoner only if a state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409–10 (2000).

A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams,* 529 U.S. at 407–08. A petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 562 U.S. at 102.

2

B. *Weight and Sufficiency of the Evidence*

Petitioner's challenges to the weight and sufficiency of the evidence supporting his conviction for robbery in the second degree are meritless. First, a challenge to the weight of the evidence "is a pure state law claim" and is not cognizable in a habeas proceeding. *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006).

Second, Haitram's testimony that petitioner pushed him to the ground before taking his van was sufficient to establish the force element of the robbery charge. *See* ECF No. 14-3 at 68 (Haitram testimony). Evidence is sufficient where "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Appellate Division concluded that the evidence was sufficient to convict petitioner, *People v. Robertson*, 172 A.D.3d 1239, 1239 (2d Dep't 2019), and that determination is due deference under AEDPA. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011). Petitioner contends that Haitram's testimony that petitioner shoved him was implausible, but "[t]he jury decided that question, and its decision is supported by the record." *Id.* at 8. Petitioner has failed to show "that the jury's verdict was irrational, let alone that it was unreasonable for the [Appellate Division] to think otherwise." *Id.*

C. *Prior Inconsistent Statements*

Petitioner argues that the trial court violated his Sixth Amendment right to confrontation, his right to present a defense, and his right to a fair trial by preventing him from impeaching Haitram with prior inconsistent statements. The Sixth Amendment guarantees an opportunity for the effective cross-examination of witnesses, but it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[T]rial judges retain wide latitude . . . to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* That discretion is limited by the constitutional guarantee of "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation omitted). Here, the trial court declined to admit Haitram's prior inconsistent statements because petitioner failed to lay a proper foundation under state law. The Appellate Division affirmed. *Robertson*, 172 A.D.3d at 1239–40.

The Appellate Division likely erred as a matter of state law. "In order to prevent surprise and give the witness the first opportunity to explain any apparent inconsistency between his testimony at trial and his previous statements, he must first be questioned as to the time, place and substance of the prior statement." *People v. Duncan*, 46 N.Y.2d 74, 81 (1978). Defense counsel questioned Haitram as to these

4

matters. *See* ECF No. 14 at 33–36; ECF No. 14-3 at 109–11. This questioning made clear to Haitram when he made the statement (the day of the incident), ECF No. 14-3 at 109, where he made it (in the police precinct), *id.* at 111, who he made it to (Officer Marrero or another police officer), *id.* at 110–11, and what the substance of the statements was (that he had left the keys to his van in the ignition, rather than dropping them when petitioner shoved him, and that he was not the owner of the van), *id.* at 108, 111. Haitram denied both statements, and it is hard to see how confronting him with them would have constituted the kind of unfair surprise that the foundation rule guards against.

The decisions excluding Haitram's prior inconsistent statements deprived petitioner of the opportunity to argue that "Haitram was lying about being pushed because he did not want to admit in open court that he had carelessly left the keys in the van[,]" which petitioner contended was owned by someone else. ECF No. 14 at 40. In other words, petitioner was "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness" — a motive to lie on the stand. *Van Arsdall*, 475 U.S. at 680.

Nevertheless, assuming that the Appellate Division's decision was an unreasonable application of federal precedents, that error was harmless. Even if impeaching Haitram regarding the location of the keys and the ownership of the van might have impacted his credibility with the jury, it would not have directly undermined Haitram's uncontroverted testimony that petitioner pushed him.

5

Petitioner has failed to show that precluding him from cross-examining Haitram with prior inconsistent statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Alvarez v. Ercole,* 763 F.3d 223, 233 (2d Cir. 2014); *Cotto v. Herbert*, 331 F.3d 217, 254 (2d Cir. 2003).

D. *Hearsay Testimony*

Petitioner's argument that the trial court violated his right to a fair trial by allowing Officer Marrero to testify to the New York State Identification (NYSID) number returned to him after he submitted petitioner's fingerprints to a state database is meritless. The NYSID number was relevant because the prosecution sought to introduce proof of prior crimes to show petitioner's intent to permanently deprive Haitram of his property, but petitioner objected because the name on the proffered certificates of disposition was slightly different from his own (although the date of birth matched). ECF No. 14-3 at 168–71. The NYSID number returned when Officer Marrero submitted petitioner's fingerprints matched the one listed on those certificates. *Id.* at 190–91; 195–96.

Under the Sixth Amendment, criminal defendants must have an opportunity to confront the witnesses who testify against them, and presentation of testimonial hearsay evidence violates that right. *Crawford v. Washington*, 541 U.S. 36, 51–52 (2004). Habeas relief from run of the mill state law evidentiary errors is appropriate only if a ruling is so erroneous that it trenches upon the petitioner's constitutional

6

right to due process. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013).

New York law, like federal law, defines hearsay as an "assertion made out of court as testimony to the truth of the fact asserted." *People v. Edwards*, 47 N.Y.2d 493, 496 (1979); *see also People v. Nieves*, 67 N.Y.2d 125, 131 (1986). The records relied upon by Officer Marrero are machine-generated, rather than prepared by a human staff member. The Department of Criminal Justice Services (DCJS) system receives these electronic record requests "24 hours a day, seven days a week, 365 days a year" and processes each transaction "in fewer than 15 minutes," on average. *State Identification Bureau*, N.Y.S. Div. of Crim. Just. Servs., https://www.criminaljustice.ny.gov/pio/fp_services.htm (last visited June 14, 2021). The District Attorney has confirmed that fingerprints submitted by officers "are automatically run through algorithms in the DCJS computerized biometric system" and "[t]he result of this search generates the criminal history report . . . which includes a computer-generated NYSID number unique to each set of fingerprints." ECF No. 18. Because there was no human declarant, there was no out-of-court statement to be offered for its truth, and therefore no hearsay. *Compare People v. Thompson*, 70 A.D.3d 866, 866–67 (2d Dep't 2010) (DNA reports prepared by private laboratories were not hearsay "'because they consisted of merely machine-generated graphs' and raw data"); *with People v. Oliver*, 92 A.D.3d 900, 901 (2d Dep't 2012) (testimony by forensic scientist that "'Albany' informed him" that DNA

7

recovered from the crime scene matched defendant's DNA profile in a state database was inadmissible hearsay because the 'Albany' source did not testify at trial).

The Appellate Division reached a different conclusion, holding that the "[t]his evidence was inadmissible hearsay, as the source of information did not testify at trial, and thus was not subject to cross-examination." *Robertson*, 172 A.D.3d at 1240. Algorithms in a "computerized biometric system," ECF No. 18, cannot testify or be subjected to cross-examination because, as petitioner's trial counsel recognized, "computer[s] can't take the stand." ECF No. 14-3 at 213. Officer Marrero was not "informed that fingerprints . . . matched," *Robertson*, 172 A.D.3d at 1240, by a human source who failed to testify, he simply read an NYSID number off of an automatically generated return. Indeed, the return contained no testimonial "conclusions, interpretations" or "subjective analysis," *People v. Brown*, 13 N.Y.3d 332, 340 (2009), that petitioner could have challenged by cross-examination had a technician or other person involved with maintaining the DCJS system been called. The fingerprint submitted by Officer Marrero either automatically returned a report containing a certain NYSID number, or it did not.[1]

---

[1] To be sure, machine-generated statements are not free from evidentiary concerns like malfunctions, data mismatches, or human error in programming. "But such concerns are addressed by the rules of authentication, not hearsay." *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015).

8

Moreover, there is no indication that the fingerprint return was testimonial under the Sixth Amendment. These returns are not "the functional equivalent" of *ex parte* in-court testimony against petitioner, nor are they created under circumstances that would cause one to "reasonably expect [them] to be used prosecutorially." *Crawford*, 541 U.S. at 51–52; *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009). Rather, the returns serve purposes like assisting police in identifying suspects after arrest or determining whether "people who would be applying for law enforcement jobs" have criminal records. ECF No. 14-3 at 190. There were no "representations[] relating to past events and human actions not revealed in raw, machine-produced data" for petitioner to scrutinize on cross-examination. *Bullcoming v. New Mexico*, 564 U.S. 647, 660 (2011). No human preparer — not even one who acted as a "mere scrivener," *id.* at 659 — certified the accuracy of the return. To the extent the Appellate Division held that automatically generated fingerprint returns are testimonial hearsay requiring confrontation under the Sixth Amendment, it unreasonably applied the relevant Supreme Court precedents. However, this conclusion does not aid petitioner because it means that the trial court properly admitted the evidence he claims violated his constitutional rights.

There are other reasons that petitioner is not entitled to relief on this ground. Regardless of the soundness of the Appellate Division's evidentiary analysis, it also reasonably concluded that the error it identified "was harmless, as there was

9

overwhelming evidence of the [petitioner's] guilt, and no significant probability that the error contributed to his convictions." *Robertson*, 172 A.D.3d at 1240. Petitioner's claim therefore fails even assuming the Appellate Division's decision was correct. Either there was no error by the trial court on which habeas relief could be granted because Marrero's statements were not testimonial hearsay, or any evidentiary error was harmless for the reasons explained by the Appellate Division. *See Brecht*, 507 U.S. at 638.

    E.  *Prosecutor's Statements in Closing*

Petitioner's claim that the prosecutor's comments in closing deprived him of his right to a fair trial is meritless. Petitioner bears a heavy burden because "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11 (1985); *see also United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004). The burden is yet heavier on habeas review, where a court must distinguish "between ordinary trial error of a prosecutor and that sort of egregious misconduct . . . [which] amount[s] to a denial of constitutional due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48 (1974). "[A] prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Petitioner argues that the prosecutor overstepped by deriding the defense as "95% speculation," "all nonsense," "absurd," and "a distraction." ECF No. 14 at 47. He also complains that the prosecutor improperly vouched for his own witnesses and elicited sympathy for the complainant by appealing to the jury's emotions. *Id.* These comments fall short of the line for constitutional error. The Appellate Division reasonably held that the prosecutor's comments "were fair response to the arguments and issues raised by the defense . . . , were fair comment on the evidence . . . , or, if improper, were not so egregious as to deprive the defendant of a fair trial." *Robertson*, 172 A.D.3d at 1240.

## CONCLUSION

The petition for relief pursuant to 28 U.S.C. § 2254 is denied. A certificate of appealability is denied.

**SO ORDERED.**

Brooklyn, New York
June 16, 2021

*Edward R. Korman*
Edward R. Korman
United States District Judge